Based upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the N.C. Workers' Compensation Act.
2. An employer/employee relationship existed between the plaintiff and defendant-employer.
3. The Genesis Underwriters is the compensation carrier on the risk.
4. Plaintiff's average weekly wage is $522.69 yielding a compensation rate of $348.84 per week.
5. Plaintiff suffered an injury by accident on November 22, 1992, resulting in multiple injuries to his body.
6. The defendant-employer admitted liability and the parties entered into a Form 21 agreement.
7. The parties stipulated to a set of medical records and to the deposition transcript of Dr. David Ross.
8. The issue to be determine by the commission is whether the plaintiff is permanently and totally disabled.
* * * * * * * * * * *
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
FINDINGS OF FADO
1. On October 22, 1992, the plaintiff was employed by Guilford County as a Deputy Sheriff.
2. On October 22, 1992, while responding to the Sheriff's Department dispatcher's call to assist another Deputy Sheriff, the plaintiff was seriously injured when a stolen car operated at a high speed, at night, with no headlights, crashed into the plaintiff's vehicle head on.
3. The plaintiff, after being extricated from the patrol car, was transported by ambulance to High Point Memorial Hospital where injuries to his head, hip, arm, wrist and ankle were initially assessed and treated.
4. The plaintiff was primarily under the medical care of Dr. David B. Ross, an orthopaedist. While under the care of Dr. Ross, plaintiff underwent open reduction internal fixation of his ankle, the acetabulum and a closed reduction of the right distal radius.
5. While continuing under the medical care of his orthopedist, Dr. David Ross, the plaintiff underwent a right total hip arthroplasty in September of 1993, using AM1 with a Duroloc for avascular necrosis.
6. One month later, in October of 1993, the plaintiff suffered a myocardial infarction, MI, and underwent successful angioplasty heart surgery.
7. In December of 1993, the plaintiff suffered some unusual arterial emboli to both lower extremities. The plaintiff has spontaneous revascularization but has been placed on Coumadin, a blood thinner medication.
8. The plaintiff, following his initial discharge from the hospital, participated in a work hardening program but in April of 1994 experienced increased right hip pain.
9. The plaintiff was thereafter examined, and his orthopedist determined there existed early acetabular migration. The plaintiff was taken to the operating room on July 5, 1994, where a revision arthroplasty was completed. Postoperatively, the plaintiff developed a staph infection and was treated with intravenous antibiotics for approximately six weeks.
10. On November 10, 1994, the plaintiff was hospitalized, after the staph infection had been treated and exterminated, for a reimplantation of his right hip. During this surgery, Dr. Ross discovered that the plaintiff had a bone infection. The reimplantation of the right hip was delayed. The plaintiff's hip was packed with antibiotic beads and the incision was closed.
11. On December 24, 1994, the infection having been successfully treated, the plaintiff underwent surgery for reimplantation of his right hip. On February 3, 1995, Dr. Thomas Ferhing, an orthopaedic surgeon who also treated the plaintiff, noted that the femoral head was not well seated in the acetabulum, and that radiologically the plaintiff had an unstable hip joint.
12. Dr. David Ross's reports, in June of 1996 and as recently as September 4, 1996, indicated that the plaintiff is totally and permanently disabled as a result of the injuries plaintiff suffered on October 22, 1992.
13. On November 11, 1995, the plaintiff was seen by Brian A. Farah, M.D., a psychiatrist who had previously seen the plaintiff following the injury of October 22, 1992, and diagnosed him as having a post traumatic stress disorder as a result of the accident. Dr. Farah noted that the plaintiff is suffering from major depression, continues to suffer from post traumatic stress disorder and suffers from chronic pain syndrome. Dr. Farah opined that the plaintiff is totally disabled.
14. On September 4, 1996, the deposition of Dr. David Ross was taken. At the deposition, Dr. Ross, the primary physician for the plaintiff since the date of his injury on October 22, 1992, opined that based upon his examination, observation and treatment of the plaintiff, that plaintiff is permanently and totally disabled and could not perform any type of gainful employment.
15. Prior to the hearing of July 25, 1996, the plaintiff had additional surgery performed on April 17, 1996, by Dr. Thomas K. Fehring, an orthopedic surgeon, with Dr. David B. Ross assisting, whereupon metal wires were removed from the femoral shaft in an endeavor to provide the plaintiff with relief from pain. The plaintiff returned to Dr. Ross on June 13, 1996, for the removal of the staples from his incision site.
16. As a result of injuries sustained in his work-related accident of November 22, 1992, the plaintiff is permanently and totally disabled.
17. The medical treatment of Drs. Ross, Ruehle, Fehring and Farah was medically necessary and reasonable based upon the medical evidence contained in the record to effect a cure, to give relief or to lessen the period of plaintiff's disability.
18. The defendants had reasonable grounds to defend this appeal based upon the difference of opinions of the doctors involved in the case regarding the plaintiff's return to work status and future prospects of returning to work.
* * * * * * * * * * *
Based upon the foregoing findings of facts, the Full Commission makes the following:
CONCLUSIONS OF LAW
1. The plaintiff sustained an admittedly compensable injury by accident on November 22, 1992 arising out of and in the course of plaintiff's employment. N.C. Gen. Stat. § 97-2(6).
2. As a result of injuries sustained from his admittedly compensable injury by accident on November 22, 1992, plaintiff is permanently and totally disabled. The plaintiff is entitled to compensation for his total disability at the rate of $348.40 per week from November 22, 1992 and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to continuing compensation for all reasonable and necessary medical expenses arising from his compensable injury during her lifetime. N.C. Gen. Stat. § 97-29.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendants shall pay the plaintiff compensation for his total disability at the rate of $348.48 per week from November 22, 1992, the date of injury, and continuing until further order of the Industrial Commission. Defendants are entitled to a credit for the compensation previously paid.
2. Defendants shall provide plaintiff continuing compensation for all reasonable and necessary medical expenses arising from his compensable injury during his lifetime when bills for the same have been submitted to the defendants and approved through procedures adopted by the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due the plaintiff is hereby awarded to plaintiff's attorney payable as follows: twenty-five percent (25%) of any accrued disability compensation and every fourth check thereafter shall be deducted from the amount due plaintiff and paid directly to plaintiff's attorney.
4. Defendants shall pay the costs due the Industrial Commission.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________ LAURA K. MAVRETIC COMMISSIONER
BSB:jth